UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL THOMAS GAUSSIRAN,<br><br>Defendant. | Case No.: CR 16-00739-CJC<br><br><br>**ORDER DENYING MOTION FOR ACQUITTAL ON COUNTS 1, 2, AND 3 OF THE INDICTMENT** |

**I. INTRODUCTION**

On September 26, 2018, after a two-day trial, the jury found Defendant Michael Thomas Gaussiran guilty of the following charges: (1) possession of fifteen or more unauthorized access devices in violation of 18 U.S.C. § 1029(a)(3); (2) aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1); (3) unlawful possession of five or

more identification documents with intent to use or transfer in violation of 18 U.S.C. § 1028(a)(3); and (4) possession of stolen mail in violation of 18 U.S.C. § 1708.

Gaussiran now moves to set aside the jury's guilty verdict on Counts One, Two, and Three, arguing that there was insufficient evidence to support that verdict. Gaussiran contends that the Court should set aside the jury's verdict on Counts One and Two on the ground that the Government failed to present proof that at least fifteen unauthorized access cards were usable. He further contends the guilty verdict on Count Three should be set aside because there was insufficient evidence of his intent and a nexus to interstate commerce. The Government opposes Gaussiran's motion, contending that expert testimony and direct evidence that Gaussiran used the cards are sufficient to support the jury's guilty verdict on Counts One and Two. The Government also contends that evidence that the identification documents had been stolen from the mail is sufficient to sustain Gaussiran's conviction of Count Three. The Court agrees with the Government. There is sufficient evidence to support the jury's guilty verdict on Counts One, Two, and Three. Accordingly, Gaussian's motion for acquittal is **DENIED**.

## II. BACKGROUND

The grand jury returned an indictment charging Gaussiran with possession of at least fifteen unauthorized access devices (Count One), aggravated identity theft (Count Two), possession with intent to use or transfer unlawfully at least five identification documents (Count Three), and possession of stolen mail (Count Four). (Dkt. 10.) The charges arose after a police officer found in Gaussiran's vehicle approximately sixty-nine credit and debit cards, two United States passports, three California driver's licenses, and 1,105 pieces of mail that belonged to other individuals. (Dkt. 1.) After a two-day jury trial, the jury convicted Gaussiran on all counts.

During trial, the jury heard testimony from three law enforcement officers, four victims, and two records custodians for Lowe's and Home Depot. Ventura Police Department Officer Rogelio Nunez testified he drove past Gaussiran's car while patrolling an area in Ventura, California, on September 12, 2016. (Dkt. 136 [Transcript 9/25/18] at 118:21–25, 120:9–22.) Officer Nunez ran a Department of Motor Vehicles records check on the car. (*Id.* at 122:8–12.) The records check revealed that the car was registered to an individual who lived in the Philippines and that the vehicle's registration had expired in April 2016. (*Id.* at 123:1–3, 153:16–20.)

Officer Nunez decided to conduct a traffic stop. Following his interactions with Gaussiran and the car's other passenger, Officer Nunez searched Gaussiran's person and the car. On Gaussiran's person, Officer Nunez found mail and a credit card in the names of individuals other than Gaussiran. (*Id.* at 137:1–14.) When Officer Nunez searched Gaussiran's car, he found in the back seat and trunk several large garbage bags filled with mail, checks, and cards, all in the names of persons other than Gaussiran or the other passenger. (*Id.* at 127:18–130:22.) In total, officers recovered over one thousand pieces of mail; approximately sixty-nine credit, debit, or gift cards; multiple checks; three California driver's licenses; and four United States passports, two of which were expired. (*Id.* at 212:16–213:7, 234:11–13.)

One of the credit cards in Gaussiran's possession belonged to Sarah Juarez. (*Id.* at 215:20–25.) Surveillance video admitted at trial showed Gaussiran using Sarah Juarez's credit card to purchase multiple items at self-checkout registers at Home Depot and Lowe's. (*Id.* at 190:11–192:2, 197:13–201:20.) The Home Depot receipt from one of these purchases further showed that when Gaussiran tried to use Sarah Juarez's card, it was initially declined three times. (Govt. Ex. 23; Transcript 9/25/18 at 198:12–14.) Gaussiran, however, kept swiping the card until, on the fourth try, the card was finally accepted and he was able to complete the purchase. (*Id.*)

The jury also heard testimony from United States Postal Inspector Douglas Bingham, an expert on mail- and identity-theft schemes. Inspector Bingham testified that credit cards contain numbers that link to individual accounts held by real persons at particular financial institutions. (*Id.* at 168:4–15.) He testified that the simplest credit card fraud scheme involves stealing a piece of mail containing a brand new credit card, calling the financial institution to activate the card, and then using the card until the owner cancels it. (*Id.* at 168:16–169:6.) He further testified that it is still possible to use a credit card even if the credit card company has flagged the card for fraud. (*Id.* at 171:11–23.)

Finally, the jury heard testimony from four victims whose items were found in Gaussiran's possession on September 12, 2016. (Dkt. 137 [Transcript 9/26/2018] at 4:14–20:20.) These victims each testified that they were expecting to receive various items in the mail, but those items never arrived. (*Id.* at 5:2–7 [Heather McClamroch testifying that she was expecting to receive her driver's license in the mail, but it never came]; *id.* at 7:9–23 [Marla Sue Remedios testifying that she was expecting to receive passports for her and her husband in the mail, but they never arrived]; *id.* at 11:6–16 [Ernesto Ferrer testifying that he had requested a credit card replacement and had expected it to arrive in the mail, but it never came]; *id.* at 16:25–17:11 [Joseph Song testifying that he had ordered a credit card replacement and had expected it to arrive in the mail, but it never came].) The victims also testified that they never gave Gaussiran permission to possess their belongings. (*Id.* at 5:25–6:8, 9:22–10:5, 14:12–22, 18:24–19:9.)

//

## III. ANALYSIS

Gaussiran claims that his convictions for Counts One, Two, and Three rest on insufficient evidence. On a motion for judgment of acquittal, the Court will uphold a conviction if, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Reed*, 575 F.3d 900, 923 (9th Cir. 2009) (quoting *United States v. Herrera-Gonzalez*, 263 F.3d 1092, 1095 (9th Cir. 2001)) (emphasis in original). "The hurdle to overturn a jury's conviction based on a sufficiency of the evidence challenge is high." *United States v. Rocha*, 598 F.3d 1144, 1153 (9th Cir. 2010).

"When viewing the evidence in the light most favorable to the government," the Court "may not usurp the role of the finder of fact by considering how [the Court] would have resolved the conflicts, made the inferences, or considered the evidence at trial." *United States v. H.B.*, 695 F.3d 931, 935 (9th Cir. 2012) (quoting *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc)). "Therefore, in a case involving factual disputes and credibility determinations," the Court "must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* (citations omitted). "Circumstantial evidence 'can be used to prove any fact,' although 'mere suspicion or speculation does not rise to the level of sufficient evidence.'" *United States v. Dinkane*, 17 F.3d 1192, 1196 (9th Cir. 1994) (quoting *United States v. Stauffer*, 922 F.2d 508, 514 (9th Cir. 1990)). "The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict." *Id.* (quoting *United States v. Mares*, 940 F.2d 455, 458 (9th Cir. 1991)).

//

### A. Counts One and Two

Gaussiran seeks to set aside his guilty conviction on Counts One and Two on the ground that there was insufficient evidence that the credit or debit cards found in the car were usable. In Count One, Gaussiran was charged with unlawfully possessing fifteen or more access devices, in violation of 18 U.S.C. § 1029(a)(3). For a defendant to be guilty under section 1029(a)(3), the Government must prove: (1) the defendant knowingly possessed at least fifteen unauthorized access devices at the same time, (2) the defendant knew that the devices were unauthorized, (3) the defendant acted with the intent to defraud, and (4) the defendant's conduct in some way affected commerce between one state and another state, or between a state of the United States and a foreign country. (Dkt. 123 [Jury Instructions (Given)], Court's Instruction No. 13; Ninth Circuit Model Criminal Jury Instruction No. 8.86.) To be guilty of aggravated identity theft, as charged in Count Two, the Government must prove, inter alia, that the defendant is guilty of Count One. *See* 18 U.S.C. § 1028A(a)(1).

An "access device" is any card, account number, or other means of account access "that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value." 18 U.S.C. § 1029(e)(1). An access device must be usable. *United States v. Onyesoh*, 674 F.3d 1157, 1159 (9th Cir. 2012). For certain types of access devices, like credit cards or bank account numbers, "usability may be self-evident." *Id.* at 1160. The usability of expired or blank credit cards, however, may not be readily apparent. *Id.* (finding government failed to prove that 500 expired credit cards where usable, which was required to justify enhancing the defendant's sentence); *United States v. Nguyen*, 81 F.3d 912, 914 (9th Cir. 1996) (holding that 110 blank credit cards were access devices under section 1029(e)(1) where the defendant also possessed an embosser and credit card account numbers).

At trial, there was significant evidence that the credit and debit cards in Gaussiran's possession were usable. The Government produced evidence that Gaussiran possessed approximately sixty credit and debit cards belonging to other individuals. (Govt. Ex. 11.) The credit and debit cards were embossed with cardholder's names and account numbers, and they were *not* expired. (*Id.*) Unlike expired or blank credit cards, the usability of these credit and debit cards was readily apparent. *Cf. Onyesoh*, 674 F.3d at 1160.

Gaussiran argues that the credit and debit cards were not usable because some of the cards had not yet been activated. Based on the evidence at trial, however, a reasonable factfinder could find that these cards were usable. Inspector Bingham testified that the numbers on the credit cards were linked to individual financial accounts and could easily be used to make purchases. (Transcript 9/25/18 at 167:23–168:15.) He testified that an individual can steal a piece of mail containing a brand new credit card, call the financial institution to activate it, and then use the card until the owner cancels it. (*Id.* at 168:16–169:6.) Inspector Bingham also testified that credit cards can potentially be used even after a credit card company flags the card for fraud or the card has expired. (*Id.* at 171:11–23.)

In addition, the Government introduced evidence that Gaussiran, in fact, was able to use several of the cards in his possession. The Government presented evidence that Gaussiran used Sarah Juarez's card to purchase items from Lowe's and Home Depot, even after the card was initially declined three times. (*See* Govt. Exs. 23, 24.) Ernesto Ferrer testified that his Discover credit card, which was also found in Gaussiran's possession, had been used to make fraudulent purchases in Bakersfield. (Transcript 9/26/18 at 13:18–14:7.) Based on Inspector Bingham's testimony about the usability of credit and debit cards and evidence that Gaussiran had used multiple credit cards in his possession, the jury could reasonably find that the credit and debit cards were usable.

### B. Count Three

Gaussiran also seeks to set aside his guilty conviction on Count Three on the grounds that there was insufficient of his intent and a nexus to interstate commerce. For a defendant to be guilty of possessing five or more identification documents for unlawful use or transfer in violation of 18 U.S.C. § 1028(a)(3), the Government must prove: (1) the defendant knowingly possessed five or more identification documents, (2) the defendant intended to use or transfer unlawfully those identification documents, and (3) the identification document was or appeared to be issued by or under the authority of the United States, or the possession of the identification document was in or affected commerce between one state and another state, or between a state of the United States and a foreign county. (Dkt. 123 [Jury Instructions (Given)], Court's Instruction No. 18; Ninth Circuit Model Criminal Jury Instruction No. 8.77.) Gaussiran was charged with possession of two U.S. passports and three California driver's licenses.

Gaussiran appears to challenge whether there was sufficient evidence that he had the intent to unlawfully use or transfer identification documents. Inspector Bingham testified that identity thieves steal mail because it contains valuable information, including personal identifying information like names, birthdates, and account numbers, which can be used to commit fraud in a variety of ways. (Transcript 9/25/18 at 165:8–167:22). He testified that driver's licenses and passports are particularly valuable because identity thieves can make fraudulent purchases, create counterfeit identifications, or sell them on the black market. (*Id.* at 167:3–22.) Against this backdrop, the jury saw evidence that Gaussiran possessed over a thousand pieces of stolen mail in his car, that he was separating the credit and debit cards and identification documents from that mail, and that he was using the items in his possession to make fraudulent purchases. (*Id.* at 130:1–22, 132:9–139:21.) The jury further saw evidence that Gaussiran possessed two passports belonging to Marla Remedios and David Remedios and three California

driver's licenses belonging to Leanna Moa, Heather McClamroch, and Kevin Braza. (*Id.* at 212:16–213:13.) It is readily apparent that Gaussiran possessed multiple identification documents without permission so he could use them or sell them. There is no other plausible explanation for why he had those identification documents in his possession and had separated them from the other stolen mail.

Gaussiran further contends that the Government failed to prove the three California driver's licenses had a nexus with interstate commerce. To satisfy the interstate nexus requirement in section 1028(a), the government "must prove only a minimal nexus with interstate commerce." *United States v. Klopf*, 423 F.3d 1228, 1239 (11th Cir. 2005) (collecting case law in the circuits that have addressed this issue). This is consistent with the statute's legislative history, which reflects that Congress intended "to provide broad Federal jurisdiction over violations of this section." *See United States v. Pearce*, 65 F.3d 22, 25 (4th Cir. 1995) (quoting H.R. Rep. No. 97-802, at 14 (1982), *as reprinted in* 1982 U.S.C.C.A.N. 3519, 3532–33).

Gaussiran contends that the Government must prove that each individual identification document has a nexus to interstate commerce, whereas the Government asserts that it needs to prove only that the aggregate possession of identification documents affected interstate commerce. In *United States v. Clayton*, the Ninth Circuit held that 18 U.S.C. § 1029(a)(3), which criminalizes the possession of fifteen or more unauthorized access devices, requires the Government to prove only that the aggregate possession affected interstate commerce. 108 F.3d 1114, 1118 (9th Cir. 1997). The Ninth Circuit has also held that a trial court did not err in instructing a jury that section 1028(a)(3), the relevant statute here, similarly requires only that the aggregate possession of identification documents affects interstate commerce. *United States v. Hunter*, 445 F. App'x 998, 1002 (9th Cir. 2011). Gaussiran attempts to distinguish between section 1029(a)(3) and section 1028(a)(3) based on the Ninth Circuit's Model Jury Instructions.

Yet the statutory language suggests no meaningful difference in either provision's interstate commerce requirement. *Compare* 18 U.S.C. § 1029(a) (requiring that "the offense affects interstate or foreign commerce"), *with id.* § 1028(c)(3)(A) (requiring "the production, transfer, possession, or use prohibited by this section is in or affects interstate or foreign commerce").

In any case, a reasonable jury could find that each identification document had a nexus to interstate commerce. There is direct evidence that all five identification documents in Gaussiran's possession had traveled through the mail. The Government submitted evidence showing that the Remedios' passports were found in mailing envelopes. (Govt. Ex. 8 at 10.) United States Postal Inspector Carl Wright testified that he recovered from Gaussiran's possession both Kevin Braza's driver's license and the envelope in which it was mailed. (Transcript 9/25/18 at 213:2–214:11.) Heather McClamroch testified that she was expecting to receive her driver's license in the mail, but it never came. (Transcript 9/26/18 at 5:2–13.) Lastly, the jury could reasonably infer that the Department of Motor Vehicles mailed the license that it issued to Leanna Moa, based on evidence that other witnesses received driver's licenses in the mail and the fact that law enforcement discovered the license in Gaussiran's car, along with over a thousand pieces of stolen mail. (Transcript 9/25/2018 at 210:15–212:23, 234:11–13.)

//

## IV. CONCLUSION

The Court finds there is sufficient evidence to support the jury's verdict. For the foregoing reasons, Gaussiran's motion for acquittal on Counts One, Two, and Three is **DENIED**.

DATED: December 10, 2018

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE